IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DISABILITY RIGHTS NETWORK OF PENNSYLVANIA, | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : <br> : |
| v. | :    Civil Action No. _____ |
| COLONIAL INTERMEDIATE UNIT 20 and CHARLENE M. BRENNAN, D.Ed. in her official capacity as the Executive Director of Colonial Intermediate Unit 20, | : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

## **COMPLAINT**

### I. Introduction

1. Plaintiff, Disability Rights Network of Pennsylvania (DRN), the organization designated by the Commonwealth of Pennsylvania pursuant to federal law to investigate abuse and neglect of people with developmental disabilities, brings this lawsuit against Defendants, Colonial Intermediate Unit 20 and its Executive Director (collectively, IU 20), to challenge their refusal to allow DRN access to records related to an investigation of alleged acts of abuse committed by one of its employees, Suzanne G. Dellorusso, against a student with a developmental disability in one of IU 20's classrooms at the Middle Smithfield Elementary School.

2. Defendants' refusal to provide DRN access to requested records related to an abuse investigation of a student with a developmental disability violates the Developmental Disabilities Assistance and Bill of Rights Act (DD Act), 42 U.S.C. §§ 15041-15043. DRN seeks appropriate declaratory and injunctive relief, as well as other relief that the court may deem appropriate.

## II.   Jurisdiction and Venue

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202.

4. Plaintiff's claims are authorized by 42 U.S.C. § 1983 and the DD Act, 42 U.S.C. §§ 15041-15043.

5. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b)(1)-(2) since Defendants' main office is located in Northampton County and a substantial part of the events and omissions that give rise to the Complaint occurred in this District.

## III.   Parties

6. Plaintiff DRN is a non-profit corporation designated by the Commonwealth of Pennsylvania as the agency responsible for protecting the rights of individuals with disabilities and to investigate abuse and

neglect of individuals with developmental disabilities pursuant to the DD Act.

7. Defendant IU 20 is headquartered at 6 Danforth Dr., Easton, PA 18045 in Northampton County. It is one of the twenty-nine intermediate units established by the Pennsylvania General Assembly in 1970 to serve as regional educational service agencies and to provide a broad array of educational services to public school districts, including special education.

8. Defendant Charlene M. Brennan, D.Ed., is the Executive Director of IU 20. Dr. Brennan is sued solely in her official capacity for acts and omissions under color of state law.

IV. **Factual Background**

9. DRN is the protection and advocacy system designated by the Commonwealth of Pennsylvania to protect the rights of and advocate for individuals with disabilities pursuant to the DD Act.

10. Under the DD Act, DRN has the duty to protect the legal and human rights of and to advocate for individuals with developmental disabilities. 42 U.S.C. §§ 15041, 15043. For purposes of the DD Act, a developmental disability for an individual age 10 and older is a severe, chronic disability that is attributable to a mental or physical impairment, is manifested before the age of 22, is likely to continue indefinitely, results in

substantial functional limitations in three or more specified major life activities, and reflects the individual's need for services, supports, or other forms of assistance. 42 U.S.C. § 15002(8)(A).

11. DRN has the authority to access the records of individuals with disabilities under certain defined circumstances. 42 U.S.C. § 15043(a)(2)(I).

12. DRN may access the records of individuals with a developmental disability who are unable to authorize such access when it receives a complaint about the status or treatment of the individual or, as a result of monitoring or other activities has reason to believe that the individual has been subject to abuse or neglect. 42 U.S.C. §§ 15043(a)(2)(I)(ii).

13. In the event that the individual with a developmental disability has a legal guardian or other legal representative, DRN may access the individual's records if: (a) it has received a complaint about the individual's status or treatment or has probable cause, as a result of monitoring or other activities, to believe the individual has been subject to abuse or neglect; (b) it has contacted the individual's legal representative "upon receipt of the name and address of such representative"; (c) it has offered assistance to the individual's legal representative; and (d) the individual's

legal representative has failed or refused to act.  42 U.S.C. § 15043(a)(2)(I)(iii).

14. The DD Act broadly defines "records" to include "a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities" and reports prepared by agencies or staff charged with investigating incidents of abuse or neglect.  42 U.S.C. § 15043(c).  Such records include investigation reports and supporting information, such as personnel information.  *See* 45 C.F.R. § 1386.22(b).

15. Under the DD Act, DRN is entitled to receive requested records within three business days after it makes a written request for records.  42 U.S.C. § 15043(a)(2)(J)(i).  If a protection and advocacy system, such as DRN, is denied access, it must be promptly provided with a written statement of reasons, including in the case of a denial for alleged lack of authorization, the name and address of the legal guardian or legal representative of an individual with disabilities.  45 C.F.R. § 1386.22(i); *see also* 42 U.S.C. § 15043(a)(2)(I)(iii)(III).

16. DRN's access authority extends to locations, including schools where services are provided to students with disabilities.  Allowing access to schools that provide services to students with disabilities enables DRN,

*inter alia,* to investigate allegations of abuse and neglect, monitor compliance with respect to the rights and safety of students with disabilities in the facility, and to provide information and referrals to these students about their individual rights and available services.

17. IU 20 provides special education and other services to thirteen school districts located throughout Monroe, Pike and Northampton counties, including the East Stroudsburg Area School District.

18. IU 20 contracts to use space in the Middle Smithfield Elementary School, part of the East Stroudsburg Area School District, to provide special education services to students with disabilities, including an autistic support program.

19. IU 20 special education teachers are supported by aides in the classroom to assist with students with disabilities.

20. From September to November 2014, Suzanne G. Dellorusso and Briar LaBar were employed by IU 20 as teacher's aides, assigned to the classroom of teacher Ashley Fehr.

21. On March 6, 2015, State Trooper Nicholas R. Desantis arrested Ms. Dellorusso and charged her with three counts of endangering the welfare of a child (18 Pa. Cons. Stat. § 4304), three counts of simple assault (18 Pa. Cons. Stat. § 2701), and three counts of harassment –

subjecting another to unwanted physical contact (18 Pa. Cons. Stat. § 2709). *Comm. v. Dellorusso*, No. CP-45-0000957-2015 (Pa. Ct. Com. Pl. Monroe Cty. filed May 18, 2015). At the preliminary hearing, District Judge Brian Germano found probable cause to allow the felony charges of endangering the welfare of a child to proceed (18 Pa. Cons. Stat. § 4304), while dismissing the lesser counts of simple assault (18 Pa. Cons. Stat. § 2701) and harassment (18 Pa. Cons. Stat. § 2709).

22. The March 6, 2015 arrest and pending charges stem from three allegations of abuse committed by Ms. Dellorusso against a nine-year old male child with autism who is non-verbal. The alleged abuse occurred at an IU 20 classroom operated at the Middle Smithfield Elementary School between September and November 2014.

23. In November 2014, an anonymous ChildLine report was filed in response to the alleged acts committed by Ms. Dellorusso. ChildLine is responsible for logging suspected child abuse claims under the Pennsylvania Department of Human Services. Officer Desantis was assigned the case for investigation. According to his police affidavit, he interviewed Ms. Fehr and another teacher's aide.

24. According to the preliminary hearing account published in the Pocono Record newspaper, in the first incident Ms. LaBar observed Ms.

7

Dellorusso placing the young boy with autism into a "safe corner" to calm down and then pushing the child to the ground when he attempted to leave the corner. *See* Andrew Scott, *Assault Counts Dismissed Against Aide*, Pocono Record, May 7, 2015, http://www.poconorecord.com/article/20150506/news/150509598 (last visited July 7, 2015). Ms. LaBar testified in the preliminary hearing to witnessing Ms. Dellorusso's open hand coming downward and making contact with the young boy's shoulder, and to the strike appearing like an intentional blow rather than a mere involuntary reflex. *Id.*

25. In the second incident, Ms. LaBar observed Ms. Dellorusso pulling the boy by his long braided hair and aggressively hitting the boy on the arm with her open hand while she attempted to take the student to the "safe corner." *Id.* While Ms. LaBar was present in the vicinity of the alleged act, she did not actively assist in applying an appropriate verbal de-escalation or restraint in this incident. *Id.*

26. In the third incident, Officer Desantis stated in his affidavit that Ms. Dellorusso grabbed the young boy by his neck in the hallway and pushed him backward over a bench against a wall. *Id.* She was the only adult with the student in the particular location at the time the incident occurred. *Id.* Officer Desantis' affidavit quoted Ms. Dellorusso as saying

that she choked the nine-year-old boy in response to his aggressive behavior. *Id.*

27. Witnesses to the multiple incidents of alleged abuse of the child with autism testified that Ms. Dellorusso did not use any proper restraint methods or request help from Ms. LaBar when dealing with the child's outbursts. *See Assault Counts Dismissed Against Aide*, *supra.*

28. In an e-mail to a parent of a student in Ms. Dellorusso's classroom, dated March 10, 2015, Dr. Brennan stated that IU 20 protocol is to call parents in situations like the acts alleged against Ms. Dellorusso. Dr. Brennan admitted in the e-mail, however, that "certain steps were just not followed in this case," and that "there is no excuse or reason… why IU 20 staff did not contact parents regarding Ms. Dellorusso." In the March 10, 2015 e-mail, Dr. Brennan also indicated there may have been a lack of supervision and a need to evaluate whether there "are enough staff in the autistic support program to oversee it."

29. Dr. Brennan further stated in the March 10, 2015 email that IU 20 was conducting its own investigation into Ms. Dellorusso's actions, including why protocols were not followed. She said that the administration was not aware of pending charges until seeing a news report on March 6,

2015, but acknowledged that the IU 20 administration was aware of a pending criminal investigation as early as January 2015.

30. A quote attributed to Dr. Brennan in the Pocono Record indicates she was aware that ChildLine had been contacted, but was not aware of the details as to specific cases of abuse or the steps taken after ChildLine was contacted. *See* Andrew Scott, *Autistic Student's Mother Wasn't Notified*, Pocono Record, Mar. 10, 2015, http://www.poconorecord.com/article/20150310/NEWS/150319946 (last visited July 7, 2015)*.*

31. On March 10, 2015, the Director of Advocacy Services at the Arc of Northeastern Pennsylvania, alerted Robyn Oplinger, a DRN lay advocate, of news reports regarding the arrest of Ms. Dellorusso and the multiple allegations of abuse against an elementary-aged student with autism. The Arc of Northeastern Pennsylvania expressed concern that given the news reports and contact they had received from students' parents that there needed to be an investigation by the DRN concerning the alleged abuse and neglect of students with developmental disabilities by Ms. Dellorusso.

32. By a letter dated and faxed on March 30, 2015, Ms. Oplinger notified Dr. Brennan that the DRN was conducting an investigation into

10

allegations of abuse of students by Ms. Dellorusso, an employee of IU 20. DRN requested that IU 20 provide all investigation reports and all documents used in the investigation of the allegations of abuse by Ms. Dellorusso. The letter stated that the records must be provided within three business days of a written request, pursuant to 42 U.S.C. § 15043(a)(2)(J)(i).

33. IU 20 did not provide the requested records within the three-day deadline. Instead, by email dated April 2, 2015, the IU 20's counsel told Ms. Oplinger that she could call him. IU 20's counsel did not advise Ms. Oplinger that IU 20 would provide the requested records nor offer any justification for refusing DRN's records request.

34. By email dated April 6, 2015, a DRN staff attorney informed IU 20's counsel that the requested records had not been received in accordance with federal law and asked that the records be produced no later than the close of business on April 9, 2015.

35. Having received no response from the IU 20's counsel in response to DRN's April 6, 2015 email, a DRN staff attorney again contacted IU 20's attorney by email on May 27, 2015, repeating the request that the records be produced. The DRN staff attorney subsequently left a

message with IU 20's counsel on June 4, 2015, again requesting that the relevant records be produced.

36.  On June 23, 2015, almost two months after DRN's initial request for records, IU 20's counsel e-mailed DRN's counsel a transcript of a termination hearing for Ms. Dellorusso conducted by IU 20 on June 9, 2015.  By e-mail dated June 24, 2015, a DRN staff attorney responded to IU 20's counsel, stating that Ms. Dellorusso's termination hearing transcript was not responsive to DRN's request for records and once again asked that IU 20 provide the requested records or give a written reason for refusing to do so.   IU 20 did not, however, produce the records.

37.  To date, despite repeated requests from both a DRN lay advocate and counsel, neither IU 20 nor its counsel have provided DRN with any of the records requested pursuant to the DD Act nor have they offered any justification for their failure to do so.

## V.  **Claim – Violation of the DD Act**

38.  Paragraphs 1 through 37 are incorporated herein by reference.

39.  DRN has been designated as the protection and advocacy system in Pennsylvania pursuant to the DD Act.

40.  Under 42 U.S.C. § 1983, Defendants may not act under color of state law to deny DRN the access to which it is entitled under the DD Act.

41. The DD Act confers authority on DRN to pursue legal, administrative, or other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of "Pennsylvanians with developmental disabilities." 42 U.S.C. § 15043(a)(2)(A)(i).

42. Accordingly, DRN has the authority and responsibility to provide protection and advocacy services to all individuals with disabilities in schools, including students with disabilities educated in the IU 20 program.

43. IU 20 has refused to provide DRN access to all records of individuals with disabilities when the individual or his legal guardian/representative authorizes such access, including, but not limited to, reports prepared by an agency charged with investigating reports of incidents or abuse, neglect, or injury, where the individual with a disability is receiving services or care. 42 U.S.C. § 15043(a)(2)(I)(i) and 42 U.S.C. § 15043(c)(2).

44. IU 20 has refused to provide these records within three (3) business days of a written request, or in the alternative, a written statement of reasons for denial of access to records.  By refusing to provide DRN with records related to its investigation of the alleged abuse commited by Ms. Dellorusso, IU 20 is violating the DD Act.  42 U.S.C. § 15043(a)(J)(i) and 45 C.F.R. §§ 1386.22(i).

## VI. Relief Requested

45. Plaintiff respectfully requests that the Court award the following relief:

    a. exercise jurisdiction over this action;

    b. issue appropriate declaratory and injunctive relief including access to IU 20's investigation report and all documents used in the investigation of the allegations of abuse by Suzanne G. Dellorusso.

    c. grant such other relief as may be appropriate, including reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

Dated: July 7, 2015      By: /s/ Koert Wehberg
Koert Wehberg
PA Attorney I.D. # 312848
Disability Rights Network of PA
1315 Walnut Street, Suite 500
Philadelphia, PA 19107-4705
215-238-8070

Counsel for Plaintiff